**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,** | § § § § | **CIVIL ACTION 6:20-CV-00475-ADA** |
| **Plaintiff,** | § § | |
| **v.** | § § § | **PATENT CASE** |
| **DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION,** | § § § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |

**RESPONSE OPPOSING DEFENDANTS' MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

There is no merit to Dell Technologies, Inc., Dell Inc., and EMC Corporation's ("Dell" or "Defendants") allegation that the Amended Complaint filed by WSOU Investments, LLC ("WSOU") fails to state a plausible claim for direct infringement of U.S. Patent No. 7,453,888 (the "'888 patent"). Defendants' flawed arguments regarding direct infringement are based on an unreasonably selective reading of the allegations in the Amended Complaint, and Defendants' flawed arguments regarding direct infringement are also based on unstated and premature claim construction positions and factual disputes that require further discovery. As explained further below, dismissal is inappropriate where the Court has yet to resolve these alleged claim construction issues and factual disputes. Additionally, Defendants' allegations regarding indirect infringement are tainted by the same deficiencies concerning direct infringement, and Defendants misapply the proper analysis regarding inducement and contributory infringement. Defendants' motion should be denied.

## ARGUMENT

### I.    Legal Standard

 In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). A claim cannot be dismissed under Rule 12(b)(6) unless the plaintiff "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)); *Altman*, 2012 WL 4033336, at *1. In other words, it must appear beyond doubt that the plaintiff can prove no set of facts in support of their claim entitling them to relief. *Griffith v. Kroger Co.*, No. 9:05-CV-76-TH, 2008 WL 11347989, at *2 (E.D. Tex. Mar. 7, 2008) (citing *Conley v, Gibson*, 355 U.S. 41, 45–46 (1957)); *see also ESW HOLDINGS, INC., Plaintiff, v. ROKU, INC.*, 6:19-CV-00044-ADA, 2019 WL 10303653, at *1–2 (W.D. Tex. May 13, 2019).

1

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim has "facial plausibility" and must not be dismissed "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal under Rule 12(b)(6) is inappropriate where fact discovery could affect the court's analysis. *See Syte - Visual Conception Ltd.*, 2020 WL 278481 at *6 (denying Rule 12(b)(6) motion because fact discovery could affect the court's § 101 analysis).

## II.   WSOU alleges a plausible claim for direct infringement.

### A.   The Amended Complaint pleads Defendants' own use and performance of the claims of the '888 patent.

Defendant's motion takes a legally incorrect and unreasonably myopic reading of the Amended Complaint. First, the Federal Circuit recently weighed in on the pleading standard for direct infringement under *Iqbal* and *Twombly* in *Disc Disease Sols. Inc. v. VGH Sols*., Inc., 888 F.3d 1256 (Fed. Cir. 2018). In *Disc Disease*, the Federal Circuit found the plaintiff's allegations sufficient because the complaint specifically identified the three accused products and alleged that the accused products met "each and every element of at least one claim" of the asserted patents, either literally or equivalently. *Disc Disease*, 888 F.3d at 1260. Similarly here, WSOU has identified accused products (*see e.g.,* Am. Compl., Dkt. 34, ¶ 13) and alleged that "[i]n view of the preceding paragraphs, each and every element of at least claim 1 of the '888 Patent is performed or practiced by Defendants at least through Defendants' own use and configuration of [their] own Accused Products, and/or through Defendants' own testing and configuration of [their] own Accused Products, and/or through Defendants' providing services for [their] Accused Products, including but not limited to providing installation, deployment, support, and configuration of

2

[their] Accused Products." Dkt. 34, ¶ 18. WSOU has also alleged that "Defendants continue to directly infringe at least one claim of the '888 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos." *Id.* ¶ 19. Therefore, WSOU's similarly pled complaint, as the plaintiff's complaint in *Disc Disease*, is more than sufficient to survive Defendant's motion to dismiss. *Disc Disease*, 888 F.3d at 1260; *see also Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, SA-18-CV-1335-XR, 2019 WL 2601347, at *4 (W.D. Tex. June 25, 2019) (applying *Disc Disease* and denying motion to dismiss complaint involving patent entitled "wireless communication approach").

Second, Defendants' motion takes an unreasonably myopic reading of the Amended Complaint and fails to acknowledge any of Defendants' own activities (about which WSOU has yet to receive discovery). Defendants' motion argues that the Amended Complaint fails to allege direct infringement because "it does not plausibly allege that anyone has actually performed each and every limitation of claim 1 of the '888 patent." Mot. at 7. However, the Amended Complaint alleges that "each and every element of at least claim 1 of the '888 Patent is performed or practiced by Defendants at least through Defendants' own use and configuration of [their] own Accused Products, and/or through Defendants' own testing and configuration of [their] own Accused Products, and/or through Defendants' providing services for [their] Accused Products, including but not limited to providing installation, deployment, support, and configuration of [their] Accused Products." Dkt. 34, ¶ 18. The Amended Complaint includes allegations that Defendants "uses" and is "using" the accused products (*see e.g.* Dkt. 34, ¶¶ 13, 19), In other words, Defendants ignores their own use of their accused products and their configuration of their accused products for others (matters about which WSOU intends to obtain discovery).

Further, Defendants' arguments run afoul of at least the following Federal Circuit instruction:

> While ACS and the other Appellees are correct that to prove infringement
> of a method patent a plaintiff must show that every step of the method is

3

performed in the claimed order, nothing in *Twombly* or *Iqbal* demands this
level of factual specificity at the pleading stage. **Such a requirement
would be dangerously close to requiring a plaintiff to prove he is
entitled to relief at the pleading stage.** At this stage of the litigation a
plaintiff is only required to plead enough facts to enable a court "to draw
the reasonable inference that the defendant is liable for the misconduct
alleged.

\*\*\*

**[T]here is no requirement that the facts alleged mimic the precise
language used in a claim**; what is necessary is that facts, when considered
in their entirety and in context, lead to the common sense conclusion that a
patented method is being practiced.

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1342 (Fed. Cir.

2012) (emphasis added) (cleaned up).

For the foregoing reasons, there is no merit to Defendants' assertion that the pleadings

fail to state a claim of direct infringement.

**B.    Defendants' arguments regarding various claim elements are improper and
premature.**

Defendants next make arguments specific to various claim elements, for example,

Defendants' motion makes arguments regarding "Cl. 1 (limitations 1a, 1b, and 1c)" and "Cl. 1

(limitation 1[d])." Mot. at 8-10. First, as previously discussed, the Federal Circuit recently weighed

in on the pleading standard for direct infringement under *Iqbal* and *Twombly* in *Disc Disease*,

where the Federal Circuit found the plaintiff's allegations sufficient because the complaint

specifically identified the three accused products and alleged that the accused products met "each

and every element of at least one claim" of the asserted patents, either literally or equivalently.

*Disc Disease*, 888 F.3d at 1260. Similarly here, WSOU has identified accused products (*see e.g.,*

Amended Complaint, Dkt. 34, ¶ 13) and alleged that "[i]n view of the preceding paragraphs, each

and every element of at least claim 1 of the '888 Patent is performed or practiced by Defendants

at least through Defendants' own use and configuration of [their] own Accused Products, and/or

through Defendants' own testing and configuration of [their] own Accused Products, and/or

through Defendants' providing services for [their] Accused Products, including but not limited to

4

providing installation, deployment, support, and configuration of its Accused Products." Dkt. 34, ¶ 18. And WSOU has also alleged that "Defendants continue to directly infringe at least one claim of the '888 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos." *Id.* ¶ 19.  Therefore, WSOU's similarly pled complaint, as the plaintiff's complaint in *Disc Disease*, is more than sufficient to survive Defendant's motion to dismiss. *Disc Disease*, 888 F.3d at 1260; *see also Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, SA-18-CV-1335-XR, 2019 WL 2601347, at *4 (W.D. Tex. June 25, 2019).

Second, to the extent Defendants are making claim construction arguments or raising factual disputes, Defendants' arguments are premature and should be rejected. For example:

- Defendants argue regarding "Cl. 1 (limitations 1a, 1b, and 1c)" that "there is no allegation that this 'numbered tag' is even a VLAN ID, let alone the required backbone VLAN ID—i.e., an extended VLAN identifier that is managed by a service provider and is independent of a standard VLAN ID." Mot. at 9.

- Defendants argue that "Plaintiff also fails to allege that a backbone VLAN ID is associated "with each one of the plurality of backbone VLAN trunks by: [] determining a plurality of stackable trunk ports corresponding to the plurality of backbone VLAN trunks . . . and . . . associating the" numbered tag with "each one of the plurality of stackable trunk ports." '888 patent, Cl. 1 (limitations c1 and c2)." *Id.*

- Defendants also argue that "Plaintiff fails to even allege that the Accused Products can be configured to select and associate a "backbone VLAN ID with each one of the corresponding plurality of backbone VLAN trunks . . . irrespective of one of an in-use and a stand-by designation of each one of the plurality of backbone VLAN

trunks and each one of the plurality of stackable trunk ports." '888 patent, Cl. 1 (limitation 1[d])." *Id.* at 10.

In each case, it is not clear whether Defendants are making arguments based on an unstated claim construction position or raising a factual dispute regarding the functionality of the accused products. However, in at least one instance Defendants appear to be making arguments based on the prosecution history of the '888 patent. *See e.g.* Mot. at 10 *citing to* arguments made at Mot. at 3-4. And in various other places Defendants cite to specification of the '888 patent. *See e.g.* Mot. at 10, 11. To the extent Defendants are relying upon a tacit claim construction argument, it is generally "inappropriate to resolve a claim construction dispute on a motion to dismiss for failure to state a claim of infringement[.]" *Regents of Univ. of Michigan v. Leica Microsystems Inc.*, 19 CV-07470-LHK, 2020 WL 2084891, at *6 (N.D. Cal. Apr. 30, 2020); *Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, W-19-CV-00257-ADA, 2020 WL 278481, at *5 (W.D. Tex. Jan. 10, 2020). And to the extent Defendants are relying upon a factual dispute regarding the functionality of the accused products, Defendants have not produced evidence sufficient to evaluate its conclusory allegations, and therefore Defendants' motion should be denied to allow proper discovery of the issue. Regardless, as Defendants' premature claim construction and fact arguments demonstrate, Defendants have been placed on notice as to the claims.

Therefore, in addition to the reasons set forth in Section II.A above, Defendant's motion further fails at least because (i) the Amended Complaint alleges a plausible claim for direct infringement under *Disc Disease* (*Disc Disease*, 888 F.3d at 1260; *see also Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, SA-18-CV-1335-XR, 2019 WL 2601347, at *4 (W.D. Tex. June 25, 2019)), and (ii) Defendants' arguments are based improperly on unstated and premature claim construction arguments and disputed factual allegations.

## III.    WSOU alleges a plausible claim for indirect infringement

As shown above, the Amended Complaint alleges a plausible claim for direct infringement. Additionally, Defendant's more specific arguments as to induced and contributory infringement

also fails, as will be discussed further below. At the outset, as this Court has previously noted, allegations of indirect infringement are a question that "appears to be one for the Court to resolve either at the summary judgment stage or at trial." *Parity Networks, LLC v. Cisco Systems, Inc.*, 6-19-cv-00207, Dkt. 23, at 3–4 (WDTX, July 26, 2019).[1]

### A. Defendants had actual or constructive knowledge of their infringement of the '888 patent since at least May 2020

#### 1. WSOU alleges Defendants had knowledge of its indirect infringement *before* WSOU filed its original complaint.

Defendants' "pre-suit knowledge" argument fails because WSOU adequately alleges Defendants *had* knowledge of their indirect infringement *before* WSOU filed its original complaint. Defendants have been on notice of its indirect infringement since at least May 2020, when WSOU filed a prior case against Defendants. *See* Am. Compl. ¶ 20. In response to WSOU's amended complaint, Defendants insist knowledge gained from reading *any* complaint must be ignored, even pre-litigation knowledge gained from reading a complaint in a *different* case. Defendants cite no authority to support this extreme position.

Defendants also argue the prior complaint filed in a different case cannot support indirect infringement because it was never served. Notably, however, Defendants do not deny having knowledge of the complaint filed in May 2020. Defendants also do not deny WSOU's well-pleaded allegation that Defendants had knowledge of their indirect infringement before the filing of the original complaint in this case. WSOU's well-pleaded allegation should be accepted, and Defendants' motion to dismiss should be denied.

#### 2. This Court should not forbid a patent holder from pursuing a claim for indirect infringement that accrues during the pendency of the lawsuit.

Even if WSOU's well pleaded allegation is ignored and it is assumed that Defendants only learned of their indirect infringement after litigation began, such that WSOU's claim for indirect infringement did not accrue until after litigation began, Defendants' motion to dismiss should be

---

[1] As explained in more detail below, WSOU believes this statement may be more accurate for "willful infringement" than for "indirect infringement," given that "willful infringement" is arguably not a cause of action.

denied because the Federal Circuit has squarely held that a party "***may seek to pursue claims that accrue during the pendency of a lawsuit[.]*****"** *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1345 (Fed.Cir.2012) (emphasis added). Under *Aspex Eyewear*, a patent holder should be allowed to pursue a claim for indirect infringement that accrues after the filing of the original complaint but during the pendency of the lawsuit. The "pre-suit knowledge" rule advocated by Defendants is directly at odds with *Aspex Eyewear*. It is also at odds with the plain language of §- 271(b) and (c), which does not limit liability for indirect infringement to pre-litigation conduct. *See* 35 USC § 271(b)-(c), and with district court opinions out of the Eastern District of Texas and Delaware.

Defendants' motion relies on *Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) to support its "pre-suit knowledge" rule, but *Aguirre* relies on a Delaware case that has since been rejected by several Delaware courts.[2] In *Walker Digital*, for example, the Court stated:

> The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff.

*Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012). Delaware reached the same conclusion in *IOENGINE, LLC v. PayPal Holdings, Inc*., CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019), finding "no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint." Other courts,

---

[2] Delaware courts are split on whether a defendant's knowledge of infringement must come from some source other than the original complaint to support a claim for indirect infringement. WSOU's amended complaint correctly states that "[s]everal Delaware courts have since rejected" the rule in *Aguirre* and quotes Delaware authority directly rejecting *Aguirre*.

including courts in Delaware and the Eastern District of Texas, have reached the same conclusion.[3]

Defendants argue the complaint itself cannot give Defendants notice of their indirect infringement because the "purpose of a complaint is not to create a claim but rather to obtain relief for an existing claim." Mot. at 13 (quoting *VLSI Technology. See VLSI Tech. LLC v. Intel Corp.*, CV 18-966-CFC, 2019 WL 1349468, at \*2 (D. Del. Mar. 26, 2019) (stating that a complaint cannot "create a claim" but citing no authority). Defendants' argument, and the "pre-suit knowledge" rule as it is stated in *VLSI*, should be rejected for multiple reasons.

First, *VLSI* is directly at odds with *Aspex Eyewear* and other Federal Court precedent recognizing that a party may pursue claims that accrue during the pendency of litigation. *See Aspex Eyewear*, 672 F.3d at 1345.

Second, the *VLSI* rule is merely a persuasive sounding semantical argument that exalts form over function. By giving notice of the defendant's indirect infringement, an original complaint does not "create" a claim. Rather, it puts the defendant on notice. For indirect infringement to occur, the defendant must choose to continue its indirect infringement despite the notice provided in the complaint. It is the defendant's continued infringement after receiving the complaint that creates the claim – not the complaint.

Third, even if the *VLSI* rule is correct as applied to original complaints, it cannot rationally apply to amended complaints. An amended complaint that alleges a defendant has had knowledge of its indirect infringement since at least the filing of the original complaint is not "creating" a claim. It is also not "creating" the required knowledge. It is merely alleging the obvious fact that the defendant has knowledge of its indirect infringement. Indeed, by the time an amended complaint is filed, the defendant has notice of its indirect infringement not only because of the filing of the original complaint, but from other direct communications with the plaintiff. Here, for

---

[3] *See also Firstface Co., Ltd. v. Apple, Inc.*, 2019 WL 1102374, \*1-2 (N.D. Cal. 2019); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355–57 (Fed. Cir. 2018); *Tierra Intelectual Borinquen, Inc. v. ASUS Computer International, Inc.,* 2014 WL 1233040, \*2 (E.D. Tex. 2014); *Telecomm Innovations, LLC v. Ricoh Co.*, 966 F.Supp.2d 390, 393 (D. Del. 2013); *E.I Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, No. 11-773, 2012 WL 4511258, at \*6 (D. Del. Sept. 28, 2012).

example, Defendants now have WSOU's infringement contentions, which were served on October 14, 2020 *before* WSOU filed its Amended Complaint.

Fourth, refusing to allow a patent holder to pursue an indirect infringement claim that accrues during the pendency of the lawsuit (a practice directly at odds with Federal Circuit precedent) will only invite multiple lawsuits on the *same* patents against the *same* defendant – a first case for direct infringement and a later case for indirect infringement. The Federal Circuit recognizes that "in patent cases, *res judicata* does not apply to bar the assertion of new claims acquired during the pendency of a litigation that could have been, but were not, litigated or adjudicated in the action." *Target Training Intern., Ltd. v. Extended Disc N. Am., Inc.*, 645 Fed. Appx. 1018, 1026 (Fed. Cir. 2016). Further, while a party "may seek to pursue claims that accrue during the pendency of a lawsuit, the party is not required to do so, and *res judicata* will not be applied to such accruing claims if the party elects not to have them included in the action." *Aspex Eyewear*, 672 F.3d at 1345. A patent holder seeking to litigate a claim for indirect infringement that accrued during the pendency of the lawsuit is not only fully within its rights but is also trying to take the most efficient course for the parties and the court.

Fifth, the *VLSI* rule creates a legal fiction (pretending a defendant who *has* actual knowledge does not) that leads to absurd results.[4] Under the *VLSI* rule, as Defendants interpret it, a defendant who first learns of its misconduct through a complaint is *forever* immune from liability for post-filing indirect infringement (even if the defendant is, in fact, indirectly infringing).[5] Thus, the instrument designed to put a defendant on notice of misconduct becomes a shield to that misconduct. Under Defendants' version of the *VLSI* rule, even if the defendant later learns of its indirect infringement through sources that would otherwise be sufficient (such as a letter from the patent holder or the defendant's own internal investigation), the defendant can ignore this

---

[4] "It is a fundamental and well-established principle of statutory construction that absurd and ridiculous results must be avoided where the language of a statute will permit." *Hensel v. United States*, 3 U.S. Cust. App. 117, 119 (Ct. Cust. App. 1912).

[5] This is incorrect even under *VLSI*—which applied only to the complaint filed in *that* case—but is the rule Defendants ask this Court to adopt.

knowledge and continue to indirectly infringe with impunity. Under this impractical rule, a letter enclosing an unfiled complaint is sufficient to put a defendant on notice of indirect infringement but the same letter, if it contains a copy of a filed complaint, is not. A defendant who receives a letter hours or minutes before a complaint is filed can be held liable for its indirect infringement, but a defendant who receives the same letter hours or minutes after a complaint is filed may continue to indirectly infringe without consequence. Such a rule creates a perverse incentive for defendants (who have unique access to information about when they gained knowledge) to conceal information about when they receive knowledge of infringement. It also places an unnecessary burden on parties and courts to conduct intensive discovery and fact finding on exactly *when* a defendant learned of its infringement (as a difference of hours or days may determine whether the defendant can be held liable for post-filing conduct). A patent holder who attempts to avoid the negative consequences of such a rule by sending a letter shortly before filing suit may find itself either (1) embroiled in discovery and factual disputes about exactly *when, where, how,* and to *whom* the letter was delivered or (2) on the receiving end of a preemptively filed declaratory judgment action in a forum of the defendant's choice.

Defendants' argument that WSOU cannot pursue a claim for indirect infringement that accrued during the pendency of this lawsuit (because the requisite knowledge was allegedly gained post-filing) is directly at odds with Federal Circuit precedent and should be rejected.

### 3.   This Court should not apply its ruling in *Parus* to indirect infringement.

Defendants' motion to dismiss conflates willful and indirect infringement standards by relying on a recent docket text order from this Court. *See* Mot. at 12 (citing *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, D.I. 54 (W.D. Tex. Feb. 20, 2020). The transcript of the *Parus* hearing suggests this Court's ruling in *Parus* was largely based on willfulness arguments and whether enhanced damages should be available for post-filing conduct.[6]  Further, there appears to be no

---

[6] *See* -477 Ex. A at 20-23, 32-35 (discussing enhanced damages) (for efficiency, WSOU is filing Exhibit A only with its response to Defendants' motion in 6:20-CV-00477-ADA). For example, during the hearing Mr. Snyder argued that allowing the complaint to create the intent necessary for willful infringement would make enhanced damages available in "literally every patent

clear holding finding pre-filing knowledge necessary for either indirect infringement or enhanced damages due to willful infringement.[7] And even assuming pre-filing knowledge is required, knowledge acquired before the filing of an amended complaint should suffice.

The knowledge required for *indirect infringement* should not be confused with the knowledge required for awarding enhanced damages to punish an infringer for *willful infringement*. Section 284 of the Patent Act allows a court to "enhance damages" for infringement "up to three times the amount found or assessed." *See* 35 USC § 284. According to *VLSI*, which Defendants rely on, "willful infringement" is not a cause of action. *VLSI Tech. LLC*, 2019 WL 1349468, at \*1 ("As the Patent Act, 35 U.S.C. § 1 *et seq.*, does not create a cause of action for willful infringement, I understand Intel's motion to dismiss "VLSI's claims for willful infringement" to be a motion . . . to dismiss VLSI's willfulness-based claim for enhanced damages under 35 U.S.C. § 284 and strike from the complaint the allegations of willful infringement."). If "willful infringement" is not a cause of action, it is arguably not a "claim" that can "accrue during the pendency of a lawsuit." This would make *Aspex Eyewear's* recognition that a party may "seek to pursue claims that accrue during the pendency of a lawsuit" inapplicable to willful infringement. There is no similar justification for refusing to apply *Aspex Eyewear* to a cause of action for indirect infringement that accrues during the pendency of litigation.

---

infringement case" and that "notice provided by the complaint does not remove a case from a garden-variety patent infringement case to the kind of case that warrants enhanced damages." -477 Resp., Ex. A at 22-23. While there may be reason for ensuring that enhanced damages are not allowed in "garden-variety" patent infringement cases, there is no similar reason to shield a defendant from ordinary damages for ongoing infringement, direct or indirect, during litigation. The arguments presented to the Court made little distinction between the proper standard for willfulness versus the proper standard for indirect infringement. -477 Ex. A at 20-23, 32-35. At the end of the Parus hearing, it appears there was confusion concerning whether one of the cases involved willfulness. When it became clear that there was no willfulness claim and that the claim only involved indirect infringement, the Court determined to take the issue up later. -477 Ex. A at 52.

[7] *See* -477 Ex. A at 46-47 ("I certainly understand all the arguments that you've made, and I'm going to have to wrestle with those arguments."). If this Court considers its decision in *Parus* to hold that pre-filing notice is required for indirect infringement damages to accrue post-filing, WSOU asks that it re-consider this finding for the reasons explained in this response.

Given the absence of statutory guidance on *when* enhanced damages should be awarded under § 284, the courts have fashioned their own tests, which generally require willfulness. *See Halo Elecs., Inc. v. Pulse Elecs.*, *Inc.*, 136 S. Ct. 1923, 1928, 195 L. Ed. 2d 278 (2016) (abrogating stringent test created by *In re Seagate Technology*, LLC, 497 F.3d 1360, 1374 (Fed.Cir.2007) but recognizing enhanced damages should still "generally be reserved for egregious cases typified by willful misconduct"). In *In re Seagate Technology*, the Federal Circuit fashioned a test (later abrogated by *Halo Electronics*) for awarding enhanced damages under § 284 that requires willful infringement. In doing so, it explained:

> Further outweighing any benefit of extending waiver to trial counsel is the realization that in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct. It is certainly true that patent infringement is an ongoing offense that can continue after litigation has commenced. However, when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement. Fed. R. Civ. Pro. 8, 11(b). So a willfulness claim asserted *in the original complaint* must necessarily be grounded exclusively in the accused infringer's pre-filing conduct. By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. **A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct**. Similarly, if a patentee attempts to secure injunctive relief but fails, it is likely the infringement did not rise to the level of recklessness.

*In re Seagate Technology*, 497 F.3d at 1374 (emphasis added). While *In re Seagate Technology* arguably supports the idea that under "ordinary circumstances" *willfulness* will depend on an infringer's prelitigation conduct, it does not support the idea that indirect infringement should be limited to pre-filing conduct. To the contrary, it expressly recognizes that "patent infringement is an ongoing offense that can continue after litigation has commenced" and states only that *enhanced* damages for such infringement should be limited to pre-filing conduct. *Id.* As the District of Delaware stated, there is "no legal impediment to having an indirect infringement cause of action limited to post-litigation conduct," as there arguably is for allegations of *willful infringement*. *Walker Digital, LLC v. Facebook, Inc.,* 852 F. Supp. 2d 559, 565 n. 7 (D. Del. 2012) (emphasis added) (citing *In re Seagate Technology*, LLC, 497 F.3d at 1374 (Fed.Cir.2007)).

13

Therefore, even if this Court was persuaded by arguments in *Parus* to find that pre-filing knowledge should be required to allow enhanced damages under § 284, it should not adopt a similar rule for a cause of action for indirect infringement that accrues during the pendency of litigation. Because the Federal Circuit has recognized that a party is free to pursue claims that accrue during the pendency of litigation, a patent holder should be free to include indirect infringement claims that accrue during the pendency of litigation in an amended complaint.

### B.    Defendants fail to establish dismissal of inducement claims is warranted.

Defendants argue that "Plaintiff's allegations of specific intent amount to a single conclusory statement that Defendants "actively induced others to infringe through their advertising, promotional materials, and two website citations." Mot. at 14. However, Defendants provide no analysis of the "advertising, promotional materials, and [the] website citations" referenced in the Amended Complaint. For example, paragraph 21 of the Amended Complaint lists two, non-exhaustive examples of "advertising, promotional materials, and [] website citations", which were referenced and excerpted in other paragraphs of the Amended Complaint. Here, the alleged activities include "advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products" in the manner claimed. Dkt. 34, ¶ 21.

These example pleadings at least are analogous to those the Federal Circuit deemed sufficient to defeat a motion to dismiss. *Nalco Co. v. Chem-Mod*, LLC, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (denying motion to dismiss where pleadings alleged defendants inducing actions included "providing instructions, support, and technical assistance for the use of the [accused instrumentality]."); *see also Script Security Solutions L.L.C. v. Amazon.com, Inc*., 170 F. Supp. 3d 928, 936 (E.D. Tex. 2016) (denying a 12(b)(6) Motion to dismiss allegations of induced infringement where "the defendants induced customers to infringe the patents by instructing them in advertising and promotion to use the accused products in an infringing way"); *Canon, Inc. v.*

*TCL Electronics Holdings Ltd.*, No. 2:18-CV-00546-JRG, 2020 WL 1478356, *5-*6 (E.D. Tex. Mar. 25, 2020) (denying motion to dismiss inducing and contributory infringement claims despite the lack of specifics in how the material the accused infringers disseminated in connection with the accused product encouraged infringement); *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819 (E.D. Tex. Sept. 27, 2019) (denying motion to dismiss because complaint contained general allegations that the end-user's of the accused software product were the direct infringers and that the accused infringer through its advertising and instruction manuals encouraged the end user to use the product in an infringing manner).

Therefore WSOU has alleged a plausible claim for induced infringement because the Amended Complaint specifically identifies "advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products" in the manner claimed.

### C. Defendants fail to establish dismissal of contributory infringement claims is warranted.

Defendants argue that "the Accused Products may be configured to not use spanning tree protocols or VLAN tagging at all, both of which are central to Plaintiff's infringement allegations." Mot. at 16. It appears Defendants are arguing that the accused products overall may have some non-infringing components and features, but WSOU has alleged that there are at least one or more components of the accused products that are especially made or adapted for infringing the '888 patent and have no substantial noninfringing use. Dkt. 34, ¶ 22.

As the Federal Circuit has acknowledged, "[t]he language of the statute incorporates the core notion that one who sells a component especially designed for use in a patented invention may be liable as a contributory infringer, provided that the component is not a staple article of

15

commerce suitable for substantial noninfringing use." *Ricoh Co. v. Quanta Computer Inc.*, 550

F.3d 1325, 1337 (Fed. Cir. 2009).[8] And the Federal Circuit went on to hold that:

> "Quanta should not be permitted to escape liability as a contributory infringer merely by embedding that microcontroller in a larger product with some additional, separable feature before importing and selling it. If we were to hold otherwise, then so long as the resulting product, as a whole, has a substantial non-infringing use *based solely on the additional feature*, no contributory liability would exist despite the presence of a component that, if sold alone, plainly would incur liability."

*Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2009) (emphasis in

original).

The Federal Circuit's decision in *Ricoh.* supports a finding that the pleadings here are

sufficient. "*Ricoh* suggests that a well-pled allegation addressed to the lack of substantial

noninfringing uses is sufficient to satisfy the knowledge element of contributory infringement."

*Motiva*, 408 F. Supp. 3d at 834. In *Motiva*, for example, the court denied a motion to dismiss the

contributory infringement claim, finding the complaint adequately alleged that the accused

products "contain a software component with no substantial noninfringing uses." *Motiva,* 408 F.

Supp. 3d at 835. The court further instructed that a patentee need only allege that a software

component does not have any substantial noninfringing uses. This is because "[r]equiring [a

patentee] to prove that [the accused infringer]'s software component only has a single use—instead

of simply alleging as much—would 'effectively require[ ] [the patentee to prove, pre-discovery,

the facts necessary to win at trial,'" and the law does not require this. *Id.* at 836 n.6 (citation

omitted); *see also Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1320-1321 (Fed. Cir. 2009)

(finding contributory infringement based on a software tool within a larger program even though

---

[8] Additionally, *Ricoh* suggests that a well-pled allegation addressed to the lack of substantial noninfringing uses is sufficient to satisfy the knowledge element of contributory infringement. *Ricoh* explained that "[w]hen a manufacturer includes in its product a component that can only infringe, the inference that infringement is intended is unavoidable." *Ricoh*, 550 F.3d at 1338. Accordingly, "it is entirely appropriate to presume that one who sells a product containing a component that has no substantial noninfringing use in that product does so with the intent that the component will be used to infringe." *Id.*

the entire software package was not alleged to contributorily infringe). Therefore, WSOU has alleged a plausible claim for contributory infringement because the Amended Complaint specifically identifies example infringing features and components of the accused product.

**IV.    To the extent necessary, the Court should allow WSOU to amend its Amended Complaint**

Although Defendants' motion is flawed and without merit, (*see e.g.* Sections II, III, above), should the Court be inclined to grant any part of Defendants' motion, WSOU respectfully requests that the Court allow WSOU to amend its Amended Complaint. Fed. R. Civ. P. 15(a)(2) (providing that leave to amend should be freely given when justice so requires.).

<u>**CONCLUSION**</u>

WSOU pleads factual content that allows this Court to draw the reasonable inference that Defendants are liable for the misconduct alleged.  Defendants have not shown that WSOU would not be entitled to relief under any set of facts or any possible theory that it could prove consistent with the allegations in the amended complaint, and its motion should be denied.

Dated: November 13, 2020                    Respectfully submitted,

*/s/ Ryan S. Loveless*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296
Brett A. Mangrum
Texas State Bar No. 24065671
Jeffrey Huang
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Jhuang@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon all counsel of record via electronic case filing in accordance with the Federal Rules of Civil Procedure on November 13, 2020.

*/s/ Ryan S. Loveless*
Ryan S. Loveless