# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>    Plaintiff,<br><br>    v.<br><br>DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC.,<br><br>    Defendants. | Case No. 6:20-cv-00473-ADA<br>Case No. 6:20-cv-00474-ADA<br>Case No. 6:20-cv-00475-ADA<br>Case No. 6:20-cv-00476-ADA<br>Case No. 6:20-cv-00477-ADA<br>Case No. 6:20-cv-00478-ADA<br>Case No. 6:20-cv-00479-ADA<br>Case No. 6:20-cv-00480-ADA<br>Case No. 6:20-cv-00481-ADA<br>Case No. 6:20-cv-00482-ADA<br>Case No. 6:20-cv-00485-ADA<br>Case No. 6:20-cv-00486-ADA<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF DISPUTED PROTECTIVE ORDER

**I.     INTRODUCTION**

In June 2021, counsel for Defendants conferred with counsel for WSOU and negotiated a resolution to each disputed provision in the protective order except for Defendants' proposed acquisition bar. Such a narrow dispute could have been efficiently and promptly raised and resolved. But for more than four months following those negotiations, WSOU systematically ignored Defendants' requests to finalize the protective order—just as WSOU had ignored Defendants' protective order proposals for several months earlier this year. After a year had passed since the parties first began protective order negotiations, and with only five weeks left before the close of fact discovery, WSOU finally responded this month, only to propose dozens of new revisions it now submits in this motion. WSOU's proposals, which contradict what the parties had already agreed months back, should be rejected as untimely raised.

Defendants nonetheless set forth below the basis for its proposals, which are uniformly preferable to WSOU's alternately contradictory, ambiguous, and unnecessary counterproposals. WSOU's reliance throughout its brief on a protective order that was stipulated by agreement with *Microsoft* provides no guidance for resolving this dispute. On the contrary, WSOU disputes here provisions that *WSOU* has *itself* agreed to in other co-pending cases in this District. Defendants respectfully request entry of the proposed protective order filed concurrently herewith.

**II.    FACTUAL BACKGROUND**

The parties first began exchanging protective order proposals in October 2020 when WSOU proposed Judge Gilstrap's default protective order from the Eastern District of Texas. (May 10, 2021 Email from A. Blythe (Ex. 1) at 13.) Defendants proposed an order tailored to the specific needs of this case, working from an example previously entered in the Western District of Texas. (*Id.* at 12-13.) Despite significant overlap in the substance of the proposals, WSOU refused to consider Defendants' proposals until Defendants ported their proposal into the Eastern District

1

of Texas default, which Defendants provided on November 25, 2020. (*Id.* at 5-12.) On December 16, 2020, WSOU provided a counterproposal, and Defendants responded on January 26, 2021, requesting a time counsel for WSOU was available to confer. (*Id.* at 4.) WSOU never responded.

Defendants followed up on February 22, 2021 with no response, and after this Court published a default standard protective order in March 2021, Defendants followed up again, porting its January 26 proposal into the format of this Court's default. (*Id.* at 1-2.) After three months without a response, WSOU responded with a proposal on April 25, 2021. (*Id.* at 2.) Defendants accepted what changes it could and responded on May 10, 2021, only one week into the fact discovery period. (*Id.* at 1.) WSOU never responded to this proposal.

In order to move the process forward, local counsel for Defendants and WSOU conferred in the first week of June 2021, reaching a compromise proposal on all outstanding issues except for the acquisition bar, a provision Defendants proposed in view of WSOU's acquisition of thousands of patents. Defendants sent a copy memorializing that agreement, with Defendants' proposed acquisition bar in track changes, on June 29, 2021. (July 8, 2021 Email from B. Shelton (Ex. 2) at 1.) Despite Defendants follow-up on July 8 (*id.*) and July 23 (July 23, 2021 Email from M. Siegmund (Ex. 3)), WSOU never responded to the proposal. Defendants followed up again on October 14, 2021, also without response. (October 14, 2021 Email from B. Shelton (Ex. 4).)

When Defendants followed up again on October 29, 2021 with a joint dispute chart teeing up the acquisition bar for the Court's consideration, WSOU finally responded, proposing the dozens of changes now in dispute on November 1, 2021. WSOU refused to join Defendants in submitting the protective order as a joint dispute, instead filing a 20-page motion[1] to which

---

[1] WSOU's 20-page motion violates the 10-page limit set forth in Civil Local Rule 7(C)(2). Defendants rely on 15 pages here to respond to WSOU's improper volume of argument.

Defendants now respond. While, in an effort to narrow the issues, Defendants were able to accept several of WSOU's last-minute proposals—some of which WSOU failed to include in its exhibit of the parties' competing proposals[2]—Defendants oppose each of WSOU's present proposals.

## III. ARGUMENT

### A. Paragraph 5(a): Access to Protected Material for Counsel Not of Record

Defendants' proposal ensures that Protected Material is limited to the appropriate outside counsel of record (and their firms). In contrast, the additional language in WSOU's proposal—"and outside counsel retained for the purpose of this litigation"—is an amorphous expansion of who has access. By adding this language, WSOU is able to hire outside firms, not of record in this litigation, without identification (including the ability of Defendants to vet those counsel for conflicts). Under WSOU's proposal, such counsel would have access to Defendants' most sensitive material, including the source code comprising the core of Defendants' business. Any counsel with a need to access that material for purposes of this litigation can simply make an appearance. This Court rejected this exact language when WSOU proposed it in litigation with ZTE. *Compare* C.A. No. 6:20-cv-00487-ADA, D.I. 74-1 at ¶ 5(a) *with* D.I. 83, at ¶ 5(a).

WSOU cites no substantive reason for its proposal, which departs from the Court's default protective order, except to say that it appeared in Defendants' earliest proposals. WSOU fails to acknowledge that such language only appeared in Defendants' early proposals as a carry-over from the Eastern District standard on which WSOU insisted. After WSOU failed to respond to

---

[2] WSOU's Exhibit B (D.I. 119-2) contains additional, silent changes that it has not called out, including by failing to include Defendants' most recent proposals (*e.g. infra* at § III.C (regarding ¶ 9) and by introducing extraneous language in Paragraphs 1 and 12(n). *Compare* Redline of Final Proposals as Submitted to Court on November 12, 2021 (Ex. 5) *with* D.I. 119-2 at ¶¶ 1 and 12(n)). The latter unsupported proposals, both of which depart from the parties' prior agreement and inject ambiguity, should be rejected.

3

Defendants' protective order offer for four months, and this Court entered its own default order, Defendants adopted the default language here, which provides more clarity as explained above. And, as noted above, WSOU agreed to Defendants' proposal back in June after the parties negotiated a compromise of the issues.

### B.     Paragraph 8: Definition of "Source Code"

The issue here is simple: what information should be protected by the highest level of protection in the protective order. Defendants propose that the definition of "source code" not be limited by the subsequent exemplary description. Although the explicitly listed items identify common examples of Source Code Material, the list is not exhaustive, and for Defendants—especially VMware, which is at its core a software company—a restrictive definition of what information is treated as "Source Code Material" is likely to be prejudicial. Indeed, the Court's default order does not define "source code" at all and furthermore includes "live data" within the scope of "Source Code Material."

WSOU proposes an unnecessarily restrictive term that would narrowly define "Source Code Material." WSOU relies on its stipulated agreement with Microsoft and a mistaken suggestion that Defendants purportedly agreed to this language previously—Defendants did not agree. WSOU's reference to *Microsoft* only proves Defendants' point. In that case, this provision was not only agreed but also includes "live data" in the scope of "Source Code Material," reducing the prejudice of any restrictive definition of "source code." Here, Defendants' original proposal stated "Source Code include[s], but [is] not limited to" the items explicitly listed there—an equivalent of the currently proposed "e.g." When Defendants later proposed "i.e." language, the definition included "and/or live data (that is, data as it exists residing in a database or databases)," as does this Court's default standard. Defendants accordingly adopted the Court's default order

4

after it was released, which likewise refers to "source code and/or live data." WSOU then struck the reference to "live data," creating the restrictive definition Defendants now dispute.

In any case, if WSOU is dissatisfied with "e.g.," Defendants are willing to adopt the Court's default definition of "Source Code Material" which is "computer source code and/or live data (that is, data as it exists residing in a database or databases)."

### C.   Paragraph 9: Access to Highly Confidential Protected Material

WSOU apparently agrees with Defendants' proposal regarding which categories of individuals may access Highly Confidential materials and appears to have raised this dispute in error as WSOU excluded Defendants' most recent proposal from its redline exhibit. WSOU's sole stated basis for disputing Defendants' position is that Defendants' proposal is allegedly missing language limiting access of in-house counsel to those without competitive decision-making authority. But Defendants proposed *precisely* such a provision, including in the parties' joint submission to the court by email on November 12, 2021. (*See* Redline of Final Proposals as Submitted to Court on November 12, 2021 (Ex. 5) at ¶ 5(c) (including the clause "provided, however, that access by in-house counsel pursuant to paragraph 5(c) be limited to in-house counsel who exercise no competitive decision making authority on behalf of the client").)

However, WSOU's proposal differs from Defendants' in that WSOU's proposal inexplicably excludes access to Highly Confidential materials for deponents who previously had access to those same materials or were authors and recipients of the materials—individuals identified in paragraphs (h) and (i), respectively. The upshot of WSOU's proposal would be to preclude the use or authentication of Highly Confidential materials in depositions despite the witness having previously authored or received such materials. It is without question that WSOU's proposal is unworkable; tellingly, WSOU provides no explanation for why the Court should impose this unusual restriction.

5

### D.  Paragraph 12(a): Number and Location of Source Code Computers

The Parties dispute the number of source code review computers to be provided by each defendant: Defendants proposes one per defendant (or two total, one for Dell source code and a second for VMware source code), WSOU proposes two each (for a total of four). WSOU's bare assertion of significant burden of working with one computer from each defendant is baseless. Especially since Defendants agreed to make such computers available in Austin, where WSOU's identified consultants for source code reside. Defendants, on the other hand, would have to double the number of computers that are purchased, maintained, and loaded with licensed software for WSOU's review. WSOU's purported rush to review source code, such that it must have two computers at once, is a byproduct of WSOU's minimal efforts to prosecute its case. With less than a month left in fact discovery, WSOU has not once requested access to source code.

The default protective order simply states that source code shall be produced at offices of outside counsel. As noted above, Defendants have already gone above and beyond that requirement, and have agreed to produce their source code in Austin, even though at least for VMware the code is not normally located in Austin. If one of the already-designated locations is not available, the parties can work together to find a mutually agreeable location for producing the source code. The Court rejected WSOU's exact proposal in *WSOU v. Google* (C.A. No. 6:20-00571-585), where Google had already offered the code in Dallas.

### E.  Paragraph 12(b): Source Code Analysis Tools

Only three weeks before the close of fact discovery, WSOU now insists upon enshrining in the protective order the provision of certain analysis tools on Defendants' source code computers, adding to the list of unnecessary disputes over the protective order. The parties already agreed that requests for installation of additional tools "will not be unreasonably denied." Rather than actually request Defendants' source code, which has been available for review for months,

6

WSOU now raises this provision by motion. Once WSOU makes such a request, Defendants can evaluate the potential ease or burden of installing these programs, and will not unreasonably decline to install them. But, given WSOU's failure to prosecute its case, Defendants have not had occasion to evaluate the potential ease or burden to date.

As to the number of days in advance for requesting installation of these tools, the parties have been in agreement on a five business day lead-time since November 2020. WSOU only proposed this reduced notice time this month, well after the protective order should have been on file. WSOU's dilatory approach to source code review does not justify shortening the notice period.

### F.     Paragraph 12(d): Source Code Reviewers' Subsequent Software Development Activity

Defendants' propose that experts and consultants reviewing source code be excluded from commercial software development related to the reviewed material during the pendency of the litigation. Defendants' proposed language is similar in purpose to a prosecution bar, but is intended to protect Defendants' confidential and valuable source code—which, especially for VMware, is a core tenet of their business models—from being used for an improper competitive purpose outside of this litigation. Additionally, in prior negotiations earlier this year, WSOU agreed to this language. Despite having previously identified its source code reviewers, WSOU raises no specific prejudice they might face.

### G.     Paragraph 12(e): Notice and Restrictions On Source Code Review

Defendants' proposal that WSOU request access to source code 14 days in advance is reasonable and allows Defendants to make the necessary logistical arrangements, including securing locations within the District and ensuring that the necessary equipment and tools are in place. WSOU's proposed notice period is unduly short, and would impose a burden on Defendants

7

and the third parties who will likely host the source code review within the District. WSOU's complaints of delay are, once again, problems of WSOU's own making, as Defendants have communicated extensively over the last year regarding entry of an appropriate protective order and WSOU has been largely unresponsive. Additionally, WSOU has declined to actually request access to source code to date.

As to WSOU's proposal regarding vaccination status, there is no need to enter an order that may be at odds with a building's or host entity's business policies surrounding vaccination status. The parties can resolve logistical issues—if any—as they arise.

### H. Paragraph 12(f): WSOU's Request for a Court Order Requiring Third Parties to Safeguard Source Code Reviewers' Personal Electronic Devices

Defendants will endeavor to provide secure storage for reviewers' personal electronic devices on an as-needed basis, but there is no justification for imposing this obligation via Court order on third parties who may agree to host the source code review computers in Austin or elsewhere in the Western District of Texas. Indeed, such an order may dissuade third parties from agreeing to host. Defendants are confident that a secure storage location can be made available without the threat of contempt, to the extent the reviewer does not have a car where such reviewer could keep such equipment when visiting the review site. WSOU agreed to a protective order in the co-pending *Cisco* matter that tellingly did not include such language. *See WSOU v. Cisco*, C.A. No. 6:21-00128-ADA, D.I. 33-1 (W.D. Tex. September 23, 2021).

### I. Paragraph 12(i): General Prohibition of Copying Source Code in Correspondence

Defendants' proposal avoids unnecessary disseminating of source code by precluding it from inclusion in regular email correspondence between counsel. WSOU's first edit, for which it provides no explanation, limits the exception for electronic copies of Source Code Material to that

set forth in Paragraph 12(k)[3] rather than Paragraph 12 generally.  But Paragraphs 12(g) and 12(r) also discuss electronic copies of Source Code Material.  WSOU then complains of the result of its first edit, saying that Defendants' proposal (that the parties not include Source Code Material in correspondence) is inconsistent with Paragraph 12(g)[4], which allows for Source Code Material in expert reports and court documents.  Not so – Paragraph 12(g) is an exception to this rule under Defendants' proposal.  Rejecting WSOU's proposal resolves WSOU's only complaint.

### J.    Paragraph 12(j): Logging Use Of Printed Source Code Material

To ensure the security of Defendants' source code, WSOU should be required to keep a log of the use of the printed source code copies provided by Defendants once those copies are in WSOU's care.  For example, Paragraph 12(g) contemplates that excerpts of Source Code Material may be included if necessary in various court documents ("Source Code Exhibits"), which themselves may require printing, for example in the submission of Chambers copies.  WSOU should log such copies of Source Code Material if it creates them.

Regarding WSOU's latter proposal that additional copies be sent to "specific individuals"—a category not elsewhere defined or agreed for access to sensitive Designated Materials—is problematic and unnecessary.  WSOU is already capable of requesting additional copies (for provision to qualified individuals defined elsewhere) and can seek relief from the Court if its requests are unreasonably denied.  Further, WSOU previously agreed to Defendants' proposal, including the language clarifying that Paragraph 12(j) does not create an exception allowing additional copies beyond the limits agreed in Paragraph 12(k).

---

[3]    To clarify, it is apparent that both parties intended the language to read "paragraph 12" rather than "paragraph 10."

[4]    WSOU confusingly mis-cites to paragraph "5(g)" instead of 12(g).

### K. Paragraphs 12(k) and 12(l): Limits on Printouts of Source Code Material

The parties dispute the number of pages of source code to be printed, the ability to create and save excerpts for printing, and the time in which disputes about such printouts must be resolved. Defendants' proposal limiting printouts of Source Code Material to 250 pages and no more than 15 pages of a continuous block is adequate, and the undisputed language contemplates permission to print additional pages if need arises, which "shall not be unreasonably denied." WSOU does not justify its broad proposal, and there is no need for WSOU's additional proposal allowing reviewers to manipulate the code on a review computer for the creation of excerpts for printing, which introduces the possibility that the code is altered prior to printing, even if incidentally. With respect to Paragraph 12(l), Defendants should not be required to provide paper copies on a one business day turnaround, or electronic copies at all, which are forbidden by the remainder of the agreed provisions except under specific circumstances. It is sufficient for WSOU to identify the code WSOU is requesting that Defendants print.

Defendants disagree that there needs to be a deadline for conferring in good faith at all, but have proposed three days as a compromise to WSOU's proposed addition of this language. A one business day turnaround for conferring on a dispute is unnecessarily stringent.

WSOU confusingly refers to this Court's default protective order paragraph 11(k), which refers to the electronic transfer of Source Code Material. This disputed paragraph does not relate to transferring Source Code Material, only to the saving of excerpts electronically on review computers for printing.

### L. Paragraph 12(o): Electronic Transport of Source Code Material

Defendants propose to limit the scope of provisions governing the transport of Source Code Material to those found in Paragraph 12—the only paragraph addressing Source Code in the protective order. Defendants' proposed limitation prevents ambiguity as to any unintended

exception that may arise from language in other provisions. WSOU fails to address its proposal in its opening brief, and WSOU's proposal should be rejected accordingly.

### M. Paragraph 13: Acquisition Bar

A significant aspect of WSOU's business model involves acquiring patents to assert against entities that sell products. Through this litigation, WSOU's counsel will gain access to Defendants' confidential information, including source code. Defendants' proposed acquisition bar marks an important protection for ensuring that Defendants' confidential information is not inadvertently misused or disclosed to Defendants' detriment, such as by facilitating acquisition of patents "*to be asserted against Defendants*" based on WSOU's or its counsel's knowledge of Defendants' confidential information.

WSOU fundamentally misunderstands the purpose of an acquisition bar, which, like a prosecution bar, is not to proscribe otherwise intentional disclosure, but to reduce the risk of *inadvertent* use or disclosure. *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1379 (Fed. Cir. 2010). Once WSOU's counsel learns of Defendants' confidential information, they cannot un-learn it. WSOU's lead counsel regularly represents companies in the business of acquiring patents, including WSOU, and previously Uniloc. There is a significant risk that WSOU's counsel, in providing advice to WSOU (or other such entities focused on acquiring patents *to assert against Defendants*), inadvertently relies on Defendants' confidential information learned through this litigation in providing that advice. To minimize the potential burden on WSOU or WSOU's counsel, Defendants' proposal is narrow, and limits such advice only as to acquisition of intellectual property that "is or will be asserted against Defendants" or the selection or valuation of patents or claims "to be asserted against Defendants."

Advising on the acquisition of patents, which is a core business function of such companies, goes directly to the heart of the "competitive decision-making" that *In re Deutsche*

11

*Bank* sets forth as the determining factor. 605 F.3d at 1378 ("Whether an unacceptable opportunity for inadvertent disclosure exists . . . should turn on the extent to which counsel is involved in 'competitive decisionmaking' with its client.") (citations omitted). In this case, an acquisition bar is likely even more critical than a prosecution bar. *Unwired Planet LLC v. Apple Inc.*, C.A. No. 3:12-cv-00505-RCJ, 2013 WL 1501489, at *3 (D. Nev. Apr. 11, 2013) ("This is the very reason for prosecution bars in patent cases, especially in this case where Unwired's sole reason for existence is to acquire patents and sue companies[.]").

One of WSOU's primary concerns with this provision is that it prohibits WSOU's counsel from providing "routine advice." That it is routine for WSOU's counsel to advise clients on the acquisition of patents to be asserted *against Defendants in particular* only confirms the particular need in this case for an acquisition bar of the limited duration proposed.

Defendants have proposed the acquisition bar language adopted by this Court in *Multimedia Content Management LLC v. Dish Network L.L.C.*, C.A. No. 6:18-cv-00207-ADA (W.D. Tex. September 25, 2019) ("*MCM*"), which involved similar concerns to those here. The language is narrowly tailored to preclude individuals with access to Defendants' highly confidential technical materials, including source code, from participating in the acquisition of patents *to be asserted against Defendants*.

Where, as here, Defendants have shown that there is a high risk of inadvertent disclosure associated with acquisition activity, the burden should be on WSOU to show on a counsel-by-counsel basis why an acquisition bar should not apply. *See Intell. Ventures I, LLC v. Lenovo Grp. Ltd.*, No. 16-CV-10860-PBS, 2019 WL 343242, at *3 (D. Mass. Jan. 25, 2019). WSOU makes no attempt to show that its counsel does not participate in competitive decision making, nor has it explained how this bar would deprive WSOU of the benefit of counsel of its choice, as Defendants'

proposals are narrowly tailored to situations that could implicate use of Defendants' confidential information to Defendants' disadvantage outside of this litigation. WSOU's failure to make a single concrete argument on this point is telling, and WSOU's general allusion to the restriction of unnamed activities that "have absolutely nothing to do" with the acquisition bar should be ignored.

WSOU's other concern, that the acquisition bar would prevent WSOU's counsel from advising WSOU on the *sale* of its patents is misplaced. Such conduct is not proscribed by Defendants' proposed *acquisition* bar. As WSOU states, such advice would not implicate the use of Defendants' confidential materials unless WSOU's counsel directly communicates that material to the acquiring party in violation of other protective order provisions. WSOU unsurprisingly cites no case for this proposition.

Lastly, WSOU's suggestion that Defendants previously agreed to a protective order lacking an acquisition bar is simply wrong. Every single copy of the protective order that Defendants have proposed, from the first version it proposed more than a year ago on October 26, 2020 through the disputed version now before the Court, has included a proposed acquisition bar. (*See* Defendants' November 25, 2020 Proposal (Ex. 1 at 5 and Ex. 6, ¶ 11); Defendants' January 26, 2021 Proposal (Ex. 1 at 4 and Ex. 7, ¶ 11).) WSOU's statement that "Dell agreed to a protective order that did not contain the acquisition bar Dell now attempts to impose" is misleading. On October 14, 2021, Defendants narrowed its proposed acquisition bar from one that precludes any participation in "acquisition activity" generally to the current proposal in hope of reaching resolution with WSOU, but Defendants have never proposed a protective order without an acquisition bar at all. WSOU's statement that "Dell agreed to a protective order without an acquisition bar on April 15, 2021" is demonstrably false. (*See* Defendants' April 15, 2021 Proposal (Ex. 1 at 3 and Ex. 8, ¶ 13).)

N. **Paragraph 14: Production of Third Party Confidential Information**

Defendants propose a mechanism for handling third-party confidentiality in a manner that does not impose an undue burden on third parties. WSOU's proposal that a party must notify the requesting Party within three business days is unnecessarily restrictive and likely moot at this late stage in discovery. While WSOU regularly relies on the *Microsoft* case for guidance throughout its brief, in that case, this Court rejected the exact proposed time limitation WSOU proposes here.

WSOU's proposal requiring a party to produce information if a third party does not intervene could require a party to ignore its contractual obligations and impose a harsh obligation the third parties, placing undue strain on the parties' relationships with those third parties. In most instances, the parties will reach agreements with third parties to produce such information, as has been the case thus far. In the rare circumstances where necessary, the appropriate mechanism is for the requesting party to move to compel—a motion which the defending party may choose not to oppose, and which can be granted easily if the third party does not intervene at that point to object.

WSOU's hypothetical assumption that the contracts in question already allow for disclosure after notice is baseless. And under WSOU's own hypothetical, if the third party agreement allowed for production after notice and a failure to object, then the party would already be contractually free to produce, mooting any need for WSOU's proposal.

O. **Paragraph 15(c): Inadvertent Production of Privileged Material**

Defendants propose that inadvertently produced privilege material be protected against further use by a receiving party after it has been identified and recalled by the producing party. Defendants' proposal is consistent with Federal Rule of Evidence 502(d) and is important to fully protecting attorney client privilege against inadvertent disclosure and in returning the parties to the position they would have been if disclosure had not occurred. Allowing a receiving party to retain

and use the contents of a privileged document in arguing against its status as privileged significantly undermines the protection against such inadvertent disclosure. Further, consistent with usual practice in such disputes, the Court may order *in camera* review of the materials in question if justified.

      P.      **Paragraph 16: Duty to Ensure Compliance with Protective Order**

Defendants' propose that a receiving party who designates an individual to receive Designated Material "reasonably ensure" that such a person observes the terms of the protective order. A receiving party has significant discretion in the disclosure of Designated Material to persons unknown to the producing party, including mock jurors, independent litigation support services, and photocopy, document imaging, and database services. (*See*, *e.g.*, Paragraph 5(f).) With that discretion should come a responsibility to reasonably ensure that such persons will observe the terms of this Order. It will surely not be a challenge for WSOU to act "reasonably" in protecting such sensitive materials.

      Q.      **Paragraph 19: Definition of Data Breach**

The parties dispute the definition of "data breach." Defendants' proposal is more specific and thorough than WSOU's proposal, which only refers generically to "misuse, compromise, or unauthorized access," all of which are hardly more than synonyms of "breach." By WSOU's own suggestion that the Court adopt a "clear" provision, the Court should adopt Defendants' proposal.

      R.      **Paragraph 20: Notification of Data Breach**

Defendants propose that should a data breach impacting Protected Material occur, notice to the producing party should be "immediate[]." Contrary to WSOU's suggestion, no serious interpretation of Defendants' proposal would require a party to notify counsel of a breach prior to becoming aware of it. WSOU's additional language is thus superfluous. Worse, WSOU's reference to "practicability" introduces leeway in what should be viewed as an urgent situation.

Dated: November 19, 2021         By:   */s/ Barry K. Shelton*
                                       Barry K. Shelton
                                       Texas State Bar No. 24055029
                                       bshelton@sheltoncoburn.com
                                       **SHELTON COBURN LLP**
                                       311 RR 620, Ste. 205
                                       Austin, TX  78734-4775
                                       Telephone:  512.263.2165
                                       Facsimile:  512.263.2166

                                       Benjamin Hershkowitz
                                       bhershkowitz@gibsondunn.com
                                       Brian A. Rosenthal
                                       brosenthal@gibsondunn.com
                                       Allen Kathir
                                       akathir@gibsondunn.com
                                       Kyanna Sabanoglu
                                       ksabanoglu@gibsondunn.com
                                       **GIBSON, DUNN & CRUTCHER LLP**
                                       200 Park Ave.
                                       NY, NY  10166-0193
                                       Telephone:  212.351.4000
                                       Facsimile:  212.351.4035

                                       Y. Ernest Hsin
                                       ehsin@gibsondunn.com
                                       Jaysen S. Chung
                                       jschung@gibsondunn.com
                                       **GIBSON, DUNN & CRUTCHER LLP**
                                       555 Mission St., Ste. 3000
                                       San Francisco, CA  94105-0921
                                       Telephone:  415.393.8200
                                       Facsimile:  415.393.8306

                                       Ryan K. Iwahashi
                                       riwahashi@gibsondunn.com
                                       **GIBSON, DUNN & CRUTCHER LLP**
                                       1881 Page Mill Rd.
                                       Palo Alto, CA  94304-1211
                                       Telephone:  650.849.5300
                                       Facsimile:  650.849.5333

                                       Emily M. Whitcher
                                       ewhitcher@gibsondunn.com
                                       Andrew P. Blythe
                                       ablythe@gibsondunn.com

16

        Nathaniel R. Scharn
        nscharn@gibsondunn.com
        **GIBSON, DUNN & CRUTCHER LLP**
        3161 Michelson Drive
        Irvine, CA  92612-4412
        Telephone:  949.451.3800
        Facsimile:  949.451.4220

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 19th day of November, 2021, I caused the following parties and counsel to be served by electronic means:

Brett Aaron Mangrum, Attorney for WSOU
brett@etheridgelaw.com

Brian Matthew Koide, Attorney for WSOU
brian@etheridgelaw.com

Jeffrey Huang, Attorney for WSOU
jhuang@etheridgelaw.com

Mark D. Siegmund, Attorney for WSOU
mark@swclaw.com

Craig D. Cherry, Attorney for WSOU
craig@swclaw.com

Justin Wayne Allen, Attorney for WSOU
justin@swclaw.com

Ryan Scott Loveless, Attorney for WSOU
ryan@etheridgelaw.com

Travis Lee Richins, Attorney for WSOU
travis@etheridgelaw.com

James L. Etheridge, Attorney for WSOU
jim@etheridgelaw.com

*/s/ Barry K. Shelton*
Barry K. Shelton